**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathryn M. Nelson,<br><br>         Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>         Defendant. | No. CV-23-00133-PHX-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Kathryn M. Nelson's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 9, "Pl. Br."), Defendant Social Security Administration Commissioner's Answering Brief (Doc. 11), and Plaintiff's Reply (Doc. 12). The Court has reviewed the briefs and Administrative Record (Doc. 6, "R.") and now affirms the decision of the Administrative Law Judge ("ALJ") (R. at 16–42) as upheld by the Appeals Council (R. at 1–6).

**I.   BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits on May 31, 2018, for a period of disability beginning January 19, 2016.[1] (R. at 252.) Plaintiff's claim was initially denied on September 25, 2018, and upon reconsideration on April 22, 2019. (R. at 16.) Plaintiff then testified at a hearing held before an ALJ on February 8, 2022. (R. at

---

[1] The ALJ considered the alleged period of disability to have begun on May 5, 2018, because the record shows that Plaintiff last worked on that date. (R. at 16, 288.)

43-85.) On March 24, 2022, the ALJ denied Plaintiff's Application (R. at 6–42), and on December 7, 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. at 1–6). On January 21, 2023, Plaintiff filed this action seeking judicial review of the denial.

The Court has reviewed the medical evidence and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, hypertension, hypothyroidism, diabetes, obstructive sleep apnea, depression, anxiety, and attention deficit hyperactivity disorder ("ADHD"). (R. at 18.)

Ultimately, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404." (R. at 20.) The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work with certain limitations, including that Plaintiff can perform simple routine tasks and can have occasional interaction with the public. (R. at 22.) Based on the vocational expert's answers to hypothetical questions, the ALJ concluded that Plaintiff could perform work as a bench assembler, plastic molder, hand packager, furniture rental clerk, or usher, and is not disabled under the Act. (R. at 41.)

## II.     LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of

supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

**III.   ANALYSIS**

Plaintiff raises four arguments for the Court's consideration: (1) the ALJ improperly rejected the medical opinions of Plaintiff's treating and examining doctors in determining Plaintiff's RFC; (2) the ALJ rejected Plaintiff's testimony without clear and convincing reasons; (3) the ALJ rejected lay witness testimony without providing specific, germane

reasons; and (4) the ALJ relied on vocational testimony given in response to an incomplete hypothetical question.

**A.      The Medical Opinions of Plaintiff's Treating and Examining Doctors**

Plaintiff first argues that the ALJ erred in rejecting the opinions of Plaintiff's examining doctors, Dr. Rosalie Hydock and Dr. Brent Geary, and Plaintiff's treating doctor, Dr. Tiffany Nunnelley-Gravdahl.

The Ninth Circuit no longer accords special deference to an examining physician. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). In 2017, the Social Security Administration amended the regulations for evaluating medical evidence. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). The 2017 regulations provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion . . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency." 20 C.F.R. § 404.1520c(a). Other factors, which an ALJ "may, but [is] not required to[] explain" when evaluating the persuasiveness of a medical opinion, are the medical source's "relationship with the claimant," "specialization," "familiarity with the other evidence in the claim," and "understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(b)(2), (c).

Moreover, the Ninth Circuit held its requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion is incompatible with the revised regulations. *Woods*, 32 F.4th at 790. Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must provide an explanation—that is, reasons—supported by substantial evidence. *Id.* This means that the ALJ "must 'articulate . . . how persuasive' [he] finds 'all of the medical opinions' from each doctor or other source, and 'explain how [he] considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. § 404.1520c(b), (b)(2)).

Dr. Hydock conducted a psychological examination of Plaintiff in September 2018. (R. at 445–55.) Dr. Hydock opined that Plaintiff may have been exhibiting cognitive decline. (R. at 454.) She further opined that Plaintiff's physical limitations impeded her ability to remain on task, and her level of physical functioning would impair her ability to maintain regular attendance. (R. at 454.) Dr. Hydock also noted that Plaintiff's appearance reflected her reported lack of attention to personal grooming. (R. at 454.)

The ALJ found Dr. Hydock's opinion unpersuasive because it was inconsistent with the overall medical record. (R. at 35.) The ALJ stated that the record suggested Plaintiff inflated her symptoms and limitations during the examination with Dr. Hydock. (R. at 32.) The ALJ noted, for example, that Plaintiff reported to Dr. Hydock that she often falls when she first gets out of bed due to stiffness (R. at 446), but she failed to mention this problem anywhere else in the record. (R. at 32.) Plaintiff also reported to Dr. Hydock that she has no social interaction because her friends "abandoned" her (R. at 448), but the ALJ stated that the record shows Plaintiff can socialize somewhat via phone, and she can go out alone, shop, run errands, and use rideshare services. (R. at 32.) And although Plaintiff reported to Dr. Hydock that she does not cook (R. at 451), the ALJ pointed to record evidence that Plaintiff can prepare simple meals. (R. at 33.) The ALJ also acknowledged that Plaintiff presented with abnormal hygiene and grooming at the examination (R. at 446) but identified many points in the record where Plaintiff presented at other visits with normal hygiene and grooming. (R. at 33.)

Furthermore, the ALJ found that the persuasiveness of Dr. Hydock's opinion was "greatly weaken[ed]" because the report stemmed primarily from Plaintiff's subjective statements regarding her daily limitations, not from objective medical evidence. (R. at 35.) The ALJ added that Plaintiff's physical impairments were outside the scope of Dr. Hydock's expertise. (R. at 35.)

Plaintiff argues that the ALJ erred in discounting Dr. Hydock's opinion, citing record evidence that Plaintiff has a very difficult time accomplishing tasks and she did not exaggerate her symptoms. (Pl. Br. at 8.) Although some evidence exists to support

Plaintiff's contentions, the ALJ identified several inconsistencies in the record and cited those as reasons for discounting Dr. Hydock's opinions. And the ALJ's conclusions were supported by substantial evidence, as shown in the ALJ's citations to the record. The ALJ therefore did not err in discounting Dr. Hydock's opinion.

Dr. Geary also performed a psychological evaluation of Plaintiff. Plaintiff complained of depression, anxiety, and feelings of hopelessness. (R. at 585–86.) Dr. Geary noted that Plaintiff presented with normal hygiene and grooming and that she was fully oriented and cooperative. (R. at 583–84.) After conducting some tests, Dr. Geary diagnosed Plaintiff with depressive disorder, panic disorder, anxiety disorder, and ADHD. (R. at 588-89.) He added that the test results showed Plaintiff would struggle to recognize changes in information and maintain pace and focus. (R. at 589.) In his summary, Dr. Geary stated that Plaintiff's physical and mental health has worsened recently, and her medications have not helped. (R. at 589.) He also noted that she struggled with psychomotor speed and information processing. (R. at 589.)

The ALJ found Dr. Geary's opinion unpersuasive because it was not consistent with the overall record. (R. at 38.) For example, although Dr. Geary opined that her medications were unhelpful, the ALJ identified many points in the record that indicate Plaintiff's mental health symptoms are managed effectively with her medication regimen. (R. at 31.) Moreover, Dr. Geary's opinion was inconsistent with Plaintiff's "strong performances" during other evaluations. (R. at 39, 411, 487, 710.) The ALJ also found that Dr. Geary's opinion was inconsistent with Plaintiff's demonstrated activities, including preparing simple meals, driving short distances, and performing light household chores. (R. at 39.) The ALJ added that Dr. Geary's comments on Plaintiff's physical impairments were outside the scope of his expertise, and he relied heavily on Plaintiff's subjective statements, which diminished the supportability of his opinion. (R. at 38.)

Plaintiff argues that the ALJ erred by rejecting Dr. Geary's opinion because Dr. Geary relied on Plaintiff's subjective statements. (Pl. Br. at 11.) Although Plaintiff cites a case that suggests an ALJ cannot reject a physician's opinion solely on that ground, *see*

*Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d. 1194 (9th Cir. 2008), the ALJ here also discussed that Dr. Geary's opinion was unsupported due to a lack of expertise in physical impairments and that it is inconsistent with the overall medical record.

To that end, Plaintiff argues that Dr. Geary's opinion is not inconsistent with the overall medical record, citing evidence that Plaintiff's medication does not help ease her symptoms. (Pl. Br. at 11.) But as with Dr. Hydock's opinion, the existence of some evidence that supports Plaintiff's position does not resolve the inconsistency identified by the ALJ. Finally, Plaintiff asserts that the activities of daily living that the ALJ cited are described in the record as being accomplished only sporadically or with significant difficulty. (Pl. Br. at 11.) Plaintiff's assertion is accurate, but nothing in the ALJ's decision suggests that the ALJ understood Plaintiff's capabilities any differently. The ALJ's conclusion was not that Plaintiff has no limitations, but that "her functioning is not as limiting as reflected in the doctor's assessment." (R. at 39.) The ALJ discussed the supportability and consistency factors and supported his conclusion with substantial evidence. Therefore, the ALJ did not err in discounting Dr. Geary's opinion.

Plaintiff's treating physician, Dr. Nunnelley-Gravdahl, opined that Plaintiff was unable to walk for any length of time during an eight-hour workday. (R. at 598.) She added that Plaintiff has moderately severe limitations with paying attention, concentrating, maintaining relationships, responding to stress, and providing consistent work effort. (R. at 598.) Dr. Nunnelley-Gravdahl concluded that Plaintiff would be absent from work more than four days per month. (R. 599.) She later wrote a letter stating that Plaintiff had been disabled since 2016, Plaintiff is unable to work and is unlikely ever to be able to work, and Plaintiff should be reevaluated in 2025. (R. at 734.)

The ALJ found Dr. Nunnelley-Gravdahl's opinion unpersuasive because it was inconsistent with the overall record. (R. at 39.) As a preliminary matter, the ALJ noted that Dr. Nunnelley-Gravdahl's letter was conclusory, and the statement that Plaintiff had been disabled since 2016 was directly contradicted by Plaintiff working as a software engineer for several months in 2017 and 2018. (R. at 39.) Furthermore, the ALJ found that

Dr. Nunnelley-Gravdahl's opinion regarding Plaintiff's physical limitations was inconsistent with Plaintiff's minimal and conservative treatment for fibromyalgia. (R. at 30, 40.) The ALJ added that Dr. Nunnelley-Gravdahl's opinion was inconsistent with medical evidence that shows many of her physical ailments are stable and managed on her medication regimen. (R. at 30, 40.) The ALJ also found her opinion regarding Plaintiff's physical limitations inconsistent with findings from other examinations during which she consistently demonstrated intact gait, balance, coordination, range of motion, and neurological functioning of the extremities. (R. at 31, 40.) And like the opinions of Drs. Hydock and Geary, the ALJ found Dr. Nunnelley-Gravdahl's opinion inconsistent with Plaintiff's activities of daily living evidenced throughout the record. (R. at 32, 40.)

Plaintiff again argues that evidence in the record shows she has significant limitations, as reported in Dr. Nunnelley-Gravdahl's opinion. (R. at 13–14.) But again, the ALJ identified inconsistencies in the record and cited those inconsistencies as reasons for discounting Dr. Nunnelley-Gravdahl's opinion. The ALJ supported his conclusion with substantial evidence, and thus the ALJ did not err.

### B. Plaintiff's Symptom Testimony

Plaintiff next argues that the ALJ erred in discounting Plaintiff's symptom testimony. When there is no evidence of malingering, an ALJ may only discount a claimant's symptom testimony if the ALJ provides "clear and convincing reasons." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022). The Ninth Circuit has clarified that this standard is not whether the reviewing court is convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Id.* at 499.

Plaintiff testified that she struggles with pain, fatigue, depression, and anxiety, and she can only stand for twenty minutes at a time. (R. at 59, 62.) She added that she struggles to use her hands because of carpal tunnel and trigger finger, and she cannot get out of bed for hours. (R. at 59, 65, 68–69.)

The ALJ discounted Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms. (R. at 23.) The ALJ stated that, although Plaintiff claimed

to have left her job in 2016 due to physical and mental health symptoms, the record shows that she worked in 2017 and 2018, which "strongly suggests that the claimant's physical and mental health symptoms are not as limiting as reported." (R. at 32.) The ALJ also noted that there is no evidence in the record from an employer or coworker to suggest she had any difficulties performing at that job. (R. at 32.)

As for Plaintiff's testimony that she suffers from debilitating pain and spends much of her time in bed, the ALJ again pointed to record evidence suggesting that Plaintiff can prepare simple meals, perform light chores, drive short distances, use rideshare services, and run some errands. (R. at 32.) And as mentioned above, the ALJ also concluded that Plaintiff inflated her symptoms during her consultative psychological examination with Dr. Hydock.

The ALJ further identified various points in the record where Plaintiff failed to follow through with treatment recommendations. (R. at 33.) The ALJ found this to be evidence that suggests Plaintiff's symptoms are not as debilitating as alleged. (R. at 33.) Moreover, the ALJ highlighted various inconsistencies in Plaintiff's reported work history, as Plaintiff would sometimes state she left her last job due to health issues and other times state that she left because her contract ended. (R. at 33–34.) The ALJ concluded that these inconsistencies diminish the reliability of Plaintiff's testimony.

The ALJ's reasons were specific and well-cited, and his "rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499. The ALJ did not err in discounting Plaintiff's testimony.

### C.  The Lay Witness Testimony

Plaintiff next argues that the ALJ erred by rejecting the lay witness testimony of Plaintiff's brother and sister. (Pl. Br. at 17.) "If [an] ALJ wishes to discount the testimony of . . . lay witnesses, he must give reasons that are germane to each witness."

Plaintiff's brother and sister each filled out a daily living questionnaire, both providing similar answers describing Plaintiff's symptoms. (R.at 343–56.) The ALJ considered these statements but found them unconvincing for many of the same reasons he

discounted Plaintiff's testimony: they described limitations that exceeded what the overall medical record suggests. (R. at 37–38.) Because the ALJ's reasoning was sufficient to discount Plaintiff's testimony, the same reasoning will suffice to discount similar lay witness testimony. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (affirming that if an ALJ provides clear and convincing reasons for rejecting a claimant's subjective complaints, and a lay witness's testimony is similar to those complaints, it follows that the ALJ has provided germane reasons for rejecting the lay witness testimony).

### D. The Vocational Expert's Testimony

Plaintiff argues that the ALJ erred by relying on the vocational expert's answers to incomplete hypothetical questions. The essence of Plaintiff's argument is that the ALJ failed to include in his hypothetical questions Plaintiff's allegations, the limitations noted by Plaintiff's brother and sister, and the limitations assessed by Drs. Hydock, Geary, and Nunnelley-Gravdahl. However, because the Court has concluded that the ALJ did not err in discounting those opinions, the ALJ did not err in omitting those limitations from the hypothetical questions.

Finally, the ALJ concluded that Plaintiff could perform five occupations based on an RFC including only "occasional interaction with the public." (R. at 22.) Plaintiff correctly points out that, based on the vocational expert's testimony, two of those occupations require frequent public contact. (R. at 81.) Nevertheless, because three of the occupations remain, the error is harmless.

**IT IS THEREFORE ORDERED** affirming the March 24, 2022 decision of the Administrative Law Judge (R. at 16–42) as upheld by the Appeals Council (R. at 1–6).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this matter.

Dated this 25th day of January, 2024.

Honorable John J. Tuchi
United States District Judge